IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RABBIA ALHOZBUR,<br><br>  Plaintiff,<br>  v.<br><br>JOHN McHUGH, Secretary of the Army,<br><br>  Defendant.<br>_____/ | NO. C 09-01576 EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Presently before the Court is the Summary Judgment Motion of Defendant John McHugh, in his capacity as Secretary of the Army ("Defendant"). Defendant seeks summary judgment on the claims of sexual harassment and retaliation stated in Plaintiff Rabbia Alhozbur's ("Plaintiff") Complaint. Having reviewed the parties' submissions, the Court finds this matter appropriate for decision without oral argument. Civ. L. R. 7-1(b). For the reasons described below, the Court grants Defendant's motion for summary judgment.[1]

## II. FACTUAL BACKGROUND

At the end of February 2007, Plaintiff began working as an Arabic Instructor in Middle East School III at the Defense Language Institute ("DLI"). (Alhozbur Deposition 29:21-22.) Emil Saleh, the chairperson of Plaintiff's department, was Plaintiff's direct supervisor. (Michael Deposition

---

[1] This disposition is not designated for publication in the official reports.

1
NO. C 09-01576 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

100:8-11; Saleh Deposition 7:24-8:13.)

As part of her orientation at DLI, Plaintiff saw a presentation on DLI's policies against sexual harassment. (Alhozbur Deposition 35:4-18.) She knew that DLI would not tolerate sexual harassment, and knew to report any feelings of sexual harassment to the Equal Employment Opportunity ("EEO") office. (Alhozbur Deposition 36:14-37:9.)

Plaintiff claims that early in her employment at DLI, Saleh made comments and looked at her in a way that made her feel sexually harassed. (Alhozbur Deposition 29:6-30:5, 32:16-19.) Despite these allegedly daily occurrences, Plaintiff did not report Saleh's behavior or discuss it with anyone. (Alhozbur Deposition 32:12-19, 37:10-15, 74:4-19.) Plaintiff alleges that a few months later, Saleh's harassing behavior escalated. (Alhozbur Deposition 51:11-15.) Plaintiff claims that on September 26, 2007, Saleh touched her for the first time, placing his hand on hers as he reached for Plaintiff's computer mouse. (Alhozbur Deposition 51:16-52:2.) Plaintiff did not discuss this incident with anyone or report it at the EEO office. (Alhozbur Deposition 53:13-14.)

On October 5, 2007, Saleh accused Plaintiff of leaving work early the previous day and verbally discussed this allegation with Plaintiff. (Saleh Deposition 67:9-72:24.) Plaintiff states that Saleh yelled at her for leaving early, closed the door, stood behind her while she was seated, and reached over her shoulder to grab her chest with his right hand. (Alhozbur Deposition 132:9-138:16.) Plaintiff alleges that after standing up and telling Saleh to stop, she said she was going to report the incident to the EEO and left Saleh's office. (Alhozbur Deposition 138:17-25, 157:4-161:4.) Saleh's version of his meeting with Plaintiff is quite different. (Halperin Declaration Exhibit A at USA0717.) Saleh alleges that Plaintiff yelled at and argued with him, slammed her hand on his desk, and abruptly walked out. (Id.) He claims that he remained sitting behind his desk, Plaintiff was on the other side of his desk, and his office door was open throughout the meeting. (Id.)

In the early afternoon of the same day, Saleh memorialized this meeting in a brief email to his supervisor, Madlain Michael ("Michael"). Saleh noted that Plaintiff had given him a "bad attitude." (Exhibit 89; Saleh Deposition 98:7-107:23.) Later that afternoon, Saleh discussed the event with Michael. (Michael Deposition 43:7-44:24; Saleh Deposition 67:9-72:24.) Saleh's

2
NO. C 09-01576 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1  account of the events caused Michael to consider the possibility of terminating Plaintiff.  (Michael
2  Deposition 43:7-44:24; Saleh Deposition 75:3-9.)  Michael told Saleh to visit the Civilian Personnel
3  Advisory Center ("CPAC") for advice on whether Plaintiff should be terminated.  (Michael
4  Deposition 43:7-44:24, 117:7-118:1; Saleh Deposition 74:12-76:12.)

5  Later that same day, Saleh went to the CPAC office.  (Saleh Deposition 76:10-15.)  Saleh
6  was referred to Terrance Messenger of the CPAC's human resources department. (Saleh Deposition
7  76:10-79:3.)  CPAC records confirm Saleh's meeting with Messenger to discuss Plaintiff.  (Exhibit
8  58; Messenger Deposition 46:16-25, 49:19-51:3, 59:4-10.)  During their meeting concerning
9  Plaintiff's behavior, Messenger recommended that Plaintiff be terminated and agreed to begin
10 drafting the termination letter once Michael made the decision to terminate.  (Saleh Deposition
11 77:9-78:10; Messenger Deposition 46:16-25, 49:19-52:24, 55:13-55:24; 58:10-59:10.)  Saleh then
12 returned to Michael and informed her that CPAC had also recommended termination. (Saleh
13 Deposition 138:16-139:7.)  At that point, on October 5, 2007, Michael made the decision to
14 terminate Plaintiff.  (Michael Deposition 117:7-118:1; Saleh Deposition 121:4-7.)  As Acting Dean,
15 it was Michael's decision to make.  (Michael Deposition 43:7-44:24, 117:7-118:1; Messenger
16 Deposition 52:19-24, 58:10-59:3; Fischer Depo. 22:10-23:3; Zhao Deposition 48:1-16, 52:23-53:4;
17 Moffett Deposition 52: 17-21.)  Michael then informed her supervisor, Jielu Zhao, of her decision
18 and sought his concurrence to finalize the termination process.  (Michael Deposition 117:7-118:1;
19 Zhao Deposition 48:1-16, 52:23-53:4.)

20 On October 10, five days after Michael decided to terminate her, Plaintiff visited the EEO
21 office.  (Alhozbur Deposition 167:12-169:17.)  Plaintiff told Paulette Walker of the EEO office that
22 Saleh had "harassed" her by accusing her of leaving work early.  (Alhozbur Deposition
23 168:15-169:13.)  Plaintiff indicated that she wanted to be transferred out of Saleh's department, but
24 did not mention that Saleh had touched her or that the harassment was sexual in nature.  (Id.;
25 Declaration of Paulette Walker ("Walker Declaration") at ¶ 2.)  Instead of filing a complaint,
26 Plaintiff chose to resolve the issue "at the department level," and keep it "friendly."  (Walker
27 Declaration at ¶ 2; Exhbit 4; Alhozbur Deposition 167:18-169:17; 172:2-19.)

28 On October 12, Plaintiff emailed Michael and Saleh seeking a transfer out of Saleh's

3
NO. C 09-01576 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

department. (Exhibit 4; Alhozbur Deposition 169:21-170:3.) In the email message, Plaintiff alleged that Saleh had yelled at her, called her a liar, and made her feel threatened and scared. (Exhibit 4; Alhozbur Deposition 172:2-174:20, 178:19-180:11.) Additionally, Plaintiff notes in the email message that she went to the EEO office "only to know [her] rights." (Exhibit 4.) She stated that she did not intend to file a complaint through the EEO process during her visit with Walker because she wanted to resolve the issue "at the department level" and keep it "friendly." (Exhibit 4; Alhozbur Deposition 172:2-174:20, 178:19-180:11.) The email message did not discuss any form of sexual harassment or the alleged October touching, and it did not give Michael the impression that Plaintiff had a discrimination complaint. (Exhibit 4; Alhozbur Deposition 172:2-174:20, 178:19-180:11; Michael Deposition 57:24-60:15.)

On October 15, Plaintiff met with Michael and Lieutenant Mark Moffett, the Associate Dean for Middle East School III. (Moffett Deposition 19:18-21:8; Michael Deposition 66:6-15.) During the meeting, Plaintiff once again asked to be transferred out of Saleh's department. (Moffet Deposition 22:22-23:8; Alhozbur182:6-185:24.) However, in making her request, Plaintiff did not tell Michael or Moffett about any of her sexual harassment claims. She also made no mention of any inappropriate touching. (Alhozbur 186:7-25, 191:10-192:18.)

By October 16, 2007, Messenger provided Saleh with a draft termination letter. (Messenger Deposition 55:7-21, 62:8-12; Saleh Deposition 80:1-6.) Three days later, Michael sent Dr. Jielu Zhao, the Assistant Provost of DLI, an email detailing her perspective on Plaintiff's conduct and concluded with a written recommendation for termination (Exhibit 107; Exhibit 41; Michael Deposition 90:9-91:18.) Zhao responded with an email to Michael, Moffett and Zhao, concurring with Michael's recommendation to terminate Plaintiff. (Exhibit 42; Zhao Deposition 59:11-23.)

Plaintiff wrote an email message to the DLI Provost's office on October 19, 2007, complaining of harassment by Saleh. (Exhibit 6; Alhozbur Deposition 197:19-25.) Once again, however, she did not indicate that the harassment was sexual in nature. (Exhibit 6; Alhozbur Deposition 197:19-198:6.) Moreover, Plaintiff emphasized that she only went to the EEO office for advice. (Exhibit 6.)

On October 22, 2007, Michael, Moffett and Saleh called Plaintiff to a meeting. (Alhozbur

4
NO. C 09-01576 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Deposition 199:12-200:8.) Michael gave Plaintiff written notice of her termination for unacceptable conduct, effective October 29, 2007. (Exhibit 5; Alhozbur Deposition 200:24-201:15.) Later that day, Plaintiff met with the Provost of DLI, Dr. Donald Fischer.[2] In the meeting, she told Fischer that Saleh had harassed her and touched her chest. (Alhozbur Deposition 209:19-210:19.) Until this meeting, Plaintiff had not told anyone, other than her husband, about the alleged sexual harassment. (Alhozbur Deposition 209:19-210:19.)

On October 25, 2007 Plaintiff drafted an email to Walker, the EEO Director, stating that she wanted to file a harassment complaint against Saleh. On October 26, 2007, before she could send the email, Plaintiff was hospitalized after falling down the stairs at work. (Alhozbur Deposition 221:7-19.) On October 30, with her husband's help, Plaintiff finished the email. (Alhozbur Deposition 236:14-237:17.) She alleges that she did not have the EEO Director's email address, and instead sent it to the DLI Provost offices. (Id.)

On December 10, 2007, Plaintiff sent her October 30, 2007 email to Paulette Walker of the EEO via U.S. Mail. (Walker Declaration ¶¶ 3-4.) Upon receipt of the letter, Walker initiated the EEO complaint procedure and prepared an EEO Counselor's Report indicating December 10, 2007 as the date of Plaintiff's initial contact with an EEO official. (Walker Declaration ¶ 4.)

On April 22, 2008, a Department of Defense Complaint Investigator held a Fact Finding Conference during which sworn testimony was taken from various witnesses, including Plaintiff, Saleh, Michael, Messenger, Moffett and Hanna. (Halperin Declaration ¶ 3.) A report of Investigation was issued on June 16, 2008. (Id.) An EEOC hearing was held before Judge Jeanne M. L. Player on January 14, 2007. (Halperin Declaration ¶ 4.) Judge Player concluded that Plaintiff failed to prove by a preponderance of the evidence that anyone at DLI had sexually harassed her or terminated her because of prior protected activity. (Id.; Halperin Declaration Exhibit A at USA 0732.) Judge Player also noted that Plaintiff did not make any specific allegations of sexual harassment until after she was terminated. (Halperin Declaration Exhibit A at USA 0725.)

---

[2] Plaintiff also alleges that she met with Paulette Walker a second time, on October 22, 2007. (Alhozbur Declaration, ¶17.) However, Plaintiff provides no further details regarding the alleged second meeting with Walker. (Id.)

5
NO. C 09-01576 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1  On April 10, 2009, Plaintiff filed a complaint in this Court, alleging sexual harassment and
2 retaliation. (Docket Item No. 1.) On February 18, 2011, Defendant filed the instant Motion for
3 Summary Judgment ("Mot."). (Docket Item No. 61.)

### III.  LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publishing Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). To meet this burden, the non-moving party must come forward with admissible evidence. Fed. R. Civ. P. 56(c); see also, Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202; Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

///

## IV.  DISCUSSION

### A.  Sexual Harassment - Hostile Work Environment

Defendant moves for summary judgment on the ground that Plaintiff failed to timely exhaust her administrative remedies.  Specifically, Defendant asserts that Plaintiff's hostile environment sexual harassment claim is time-barred.  (Mot. at 11.)

Federal employees alleging Title VII discrimination must contact an EEO office within 45 days of an alleged discriminatory act.  29 C.F.R. § 1614.105(a)(1).  Failure to comply with the pre-filing exhaustion requirement is grounds for dismissal of an EEO complaint.  Kraus v. Presidio Trust Facilities Div./Residential Management Branch, 572 F.3d 1039, 1043 (9th Cir. 2009) (citing cases).  To meet this requirement, the employee must (1) "initiate contact with a Counselor" and (2) "exhibit an intent to begin the EEO process."  Kraus, 572 F.3d at 1043.  While the person to whom the employee speaks need not have the title of "Counselor," that person must be "logically connected with the EEO process."  Id. at 1044.

In this case, Plaintiff alleges that she was sexually harassed on October 5, 2007.  To timely exhaust her administrative remedies, Plaintiff was required to initiate contact with a Counselor and exhibit an intent to begin the EEO process by November 19, 2007.  The evidence presented by Defendant, however, reveals that it was not until December 10, 2007 that Plaintiff initiated contact as required.  (Walker Declaration ¶¶ 3-4; Walker Declaration Exhibit C at US0344.)  By this evidence, Defendant meets his initial burden of demonstrating the absence of a triable issue of material fact as to whether Plaintiff timely initiated the EEO process.

Since Defendant has met his initial burden, Plaintiff must designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324.  Plaintiff asserts that she demonstrated an intent to begin the EEO process within the 45-day time frame through several communications: (1) During her meeting with Walker on October 10, 2007; (2) During an alleged second meeting with Walker on October 22, 2007; (3) In an email sent on October 30, 2007; and (4) In a letter mailed to Walker on or around December 10, 2007.  (Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp'n"), Docket Item No. 62.)  The Court will examine each communication in turn.

### 1. Plaintiff's Contact With Paulette Walker on October 10, 2007

Plaintiff asserts that she satisfied Title VII's exhaustion requirement when she spoke to EEO specialist Paulette Walker on October 10, 2007. This argument fails, however, as the "only" purpose of Plaintiff's visit with Walker was "to know [her] rights." Plaintiff did not tell Walker that she had been sexually harassed or touched by Saleh. Instead, Plaintiff expressed unhappiness that Saleh had accused her of not being in her office on October 4, 2007. Plaintiff later confirmed that she did not intend to file a complaint through the EEO process during her visit with Walker because she wanted to resolve the issue "at the department level" and keep it "friendly." By her own admissions, Plaintiff made clear that her October 10 visit to the EEO was simply to know her rights; not to begin the EEO process of filing a complaint of sexual harassment.

### 2. Plaintiff's Second Meeting With Paulette Walker

Plaintiff alleges that she met with Walker a second time, after receiving the termination letter from DLI (Alhozbur Declaration, ¶17.) However, Plaintiff fails to provide any evidence that she exhibited "an intent to begin the EEO process" at this meeting with Walker. There is no evidence that, at their second meeting, Plaintiff told Walker she had been sexually harassed or asked to bring a complaint. Rather, when questioned about whether she wanted to pursue the EEO process at the second meeting, Plaintiff testified that she "[didn't] remember." (Alhozbur Deposition 279:7-280:3.) Likewise, Plaintiff's declaration lacks any detail about what she said to Walker during their second meeting, stating only that she "met with Paulette Walker at the EEO office." (Alhozbur Declaration, ¶17.) Plaintiff's testimony does not contradict Walker's declaration, which makes no mention of such a meeting.[3] Accordingly, Plaintiff has presented no evidence to support her assertion that she intended to begin the EEO process during a second meeting with Walker.

### 3. Plaintiff's E-mail Communication on October 30, 2007

Plaintiff asserts that she sent an email on October 30, 2007 with the subject line "Sexual

---

[3] Absent further details, Plaintiff's bare allegation that she met with met with Walker a second time does not create a dispute of material fact sufficient to defeat summary judgment. Plaintiff must present admissible evidence that during her meeting she told Walker she had been sexually harassed, asked to bring a complaint, or otherwise exhibited an intent to begin the EEO process.

1  Harassment, Threats and Religious Discrimination" to Colonel Sue Anne Sandusky (the
2  Commandant for the Defense Language Institute ("DLI")), Donald Fischer (the Provost), and Jielu
3  Zhao (the Associate Provost).[4]  See Alhozbur Declaration ¶¶ 18-19, Ex. F.  Plaintiff offers no
4  evidence that any one of these individuals is logically connected with the EEO process.  To the
5  contrary, Sandusky, Fischer and Zhao are all employed by DLI and have no apparent connection to
6  the EEO office.  The Court finds that to satisfy the exhaustion requirements for a Title VII claim,
7  Plaintiff must have initiated contact with an official actually employed by, or with the phrase "EEO"
8  in his or her title.  See Gebhardt v. Chu, C. 10-2807 MEJ, 2010 WL 5211459, at *9 (N.D. Cal. Dec.
9  16, 2010) (concluding that Kraus only "sanctions contact with officials actually employed by, or
10 with the phrase 'EEO' in their title").  Sandusky, the head of DLI, does not meet this standard, nor
11 do Fischer and Zhao of DLI's Provost office.  Accordingly, Plaintiff's email on October 30, 2007 is
12 not evidence supportive of Plaintiff's claim that she met the exhaustion requirements of Title VII.

           4.   Plaintiff's Letter to Paulette Walker on December 10, 2007

14         Plaintiff asserts that she sent the October 30, 2007 email to Paulette Walker via U.S. mail
15 since she was unable to obtain Walker's email address.[5]  However, Plaintiff's declaration does not
16 state when she mailed the letter to Walker.  The only information Plaintiff provides as to the timing
17 of the communication is that she did *not* send the email to Walker on October 25, 2007.  This
18 evidence creates no dispute with the Declaration of Paulette Walker, which states that Plaintiff's
19 letter was dated December 6, 2007 and postmarked on December 10, 2007.  Walker also declares
20 that her receipt of the letter in December was the first time Plaintiff indicated to her that she was
21 alleging sexual harassment or wished to pursue the EEO complaint process.  Thus, the only evidence

---

[4] Two headers appear in the October 30, 2007 email but there is no dispute that only the first header is accurate.  Plaintiff only sent her email to Zhao, Fischer, and Sandusky on October 30, 2007.  The second header, which contains a date of October 26, 2007 and includes a wider distribution list than the first, was not actually sent to those individuals on that date.  See Alhozbur Declaration ¶ 20, Exhibit F.

[5] Plaintiff also contends that she mailed the October 30, 2007 letter to Skip Johnson of the Inspector General's office via U.S. mail.  Plaintiff offers neither evidence nor authority to support a contention that Johnson is an agency official logically connected with the EEO process.  Further, Plaintiff offers no evidence about when the letter was actually delivered to Johnson.  For these reasons, the Court does not find evidence to support Plaintiff's contention that her letter to Johnson met the exhaustion requirements of Title VII.

presented demonstrates that this contact with the EEO office was too late, as it occurred 66 days after the October 5, 2007 event. For these reasons, Plaintiff's untimely communication to Paulette Walker on December 10, 2007 does not meet the exhaustion requirements for a Title VII claim.

Summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Here, Plaintiff has failed to establish the existence of a material fact as to whether she timely exhausted her administrative remedies. The uncontroverted facts reveal that Plaintiff did not demonstrate an intent to begin the EEO process within the 45-day time limit. Accordingly, Plaintiff's claim of sexual harassment is time-barred. The Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's claim of sexual harassment - hostile work environment.

### B. Retaliation Claim

It is unlawful to subject employees to adverse employment actions because they engaged in protected activity, such as complaining of sexual harassment. Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). To establish a prima facie claim of retaliation, a plaintiff must show "(1) involvement in protected activity, (2) an adverse employment action, and (3) a causal link between the two." Id. at 928; see also Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).

Defendant moves for summary judgment on the basis that DLI made the decision to terminate Plaintiff prior to her engaging in any protected activity. (Mot'n at 4.) According to Defendant, Plaintiff cannot establish the causal nexus needed for a prima facie claim of retaliation, since Plaintiff was terminated before she first visited the EEO Office or notified anyone that she had been sexually harassed.[6] (Mot. at 14.)

To meet his burden on summary judgment, Defendant points to deposition testimony as evidence that the decision to terminate Plaintiff's employment was made on October 5, 2007. Saleh testified that Plaintiff's conduct toward him during their October 5 meeting prompted him to contact

---

[6] Defendant does not concede that Plaintiff's October 10, 2007 visit constitutes protected activity, and contends that Plaintiff only asked about her rights, told no one about any sexual harassment, and did not attempt to bring an EEO claim of any kind. (Mot. at 14.); see supra.

Madlain Michael, the Acting Dean of Middle East School III. That same day, after discussing Plaintiff's behavior with Saleh and seeking the advice of the CPAC, Michael made the decision on behalf of Middle East School III to terminate Plaintiff's employment. Plaintiff admits that she did not tell anyone other than her husband that she had been sexually harassed until after she received her termination letter on October 22. Thus, Michael's decision to terminate Plaintiff could not have been retaliation for sexual harassment claims that had not yet been made. Based upon this evidence, the Court finds no issue of material fact and shifts the burden to Plaintiff to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324.

Plaintiff argues that she engaged in protected activity prior to any termination decision on October 5, 2007. According to Plaintiff, her rejection of Saleh's alleged sexual advances on October 2 and October 5 constituted protected activity under the "opposition clause" of 42 U.S.C. § 2000e-3(a). (Opp'n at 9-10.)

The Supreme Court has not yet decided whether "opposition," as used in Section 2000e-3(a), includes an employee's rejection of sexual advances. See Crawford v. Metro. Gov't of Nashville & Davidson County, Tennessee, 129 S. Ct. 846 (2009). Lower courts are divided on whether or not refusal to submit to a supervisor's sexual advances constitutes "protected activity." Only two circuit courts have addressed the issue - the Fifth and the Eighth Circuit Courts of Appeals - and each reached a different conclusion. See LeMarie v. Louisiana Dep't of Transp. & Dev., 480 F.3d 383, 389-90 (5th Cir. 2007) (employee's rejection of supervisor's advances does not constitute protected activity); Ogden v. Wax Works, Inc., 214 F.3d 999, 1007 (8th Cir. 2000) (plaintiff engaged in most "basic form of protected conduct" when she told her supervisor to stop harassing her). A number of district courts have held that rejecting a sexual advance does not amount to protected activity[7], while other district courts have held just the opposite: that rejecting a sexual

---

[7] See e.g., Farfaras v. Citizens Bank & Trust, No. 01 C 8720, 2004 WL 2034077 (N.D.Ill. Aug. 30, 2004); Rachel-Smith v. FTData, Inc., 247 F.Supp.2d 734 (D.Md. 2003); Jones v. County of Cook, No. 01 C 9876, 2002 WL 1611606, at *4 (N.D. Ill. July 17, 2002); Rashid v. Beth Israel Med. Ctr., No. 96 Civ. 1833 (AGS), 1998 WL 689931, at *2 (S.D.N.Y. Oct. 2, 1998); Fitzgerald v. Henderson, 36 F.Supp.2d 490 (N.D.N.Y. 1998); Del Castillo v. Pathmark Stores, Inc., 941 F.Supp. 437 (S.D.N.Y. 1996).

United States District Court
For the Northern District of California

advance is protected activity.[8]

This Court finds that rejecting a sexual advance does not amount to protected activity. The purpose of a reporting requirement in the opposition clause "is a logical one: in order to protect an employee from an employer's retaliation for opposing a practice, the employer must first have been placed on notice of a problematic practice." Rachel-Smith v. FTData, Inc., 247 F. Supp. 2d 734, 747-749 (D. Md. 2003). "Even the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity' consists simply of declining a harasser's sexual advances . . . . If it were otherwise, every harassment claim would automatically state a retaliation claim as well." Del Castillo v. Pathmark Stores, Inc. 941 F. Supp. 437, 439 (S.D.N.Y. 1996). In this case, the merger of the two claims would be complete, as plaintiff concedes that no one at DLI knew of Plaintiff's alleged "protected activity" of refusing Saleh's sexual advances. "Because an employee who sexually harasses a fellow employee would have no incentive to inform the employer of his actions, the knowledge of the harasser cannot fairly be imputed to his employer." Id, 941 F. Supp. at 438-39. Thus, refusal directed to the alleged harasser, even where the harasser is a supervisor, cannot be equated with notice to the employer. Accordingly, the Court rejects Plaintiff's argument that refusing Saleh's alleged sexual advances constituted protected activity for the purposes of a Title VII retaliation claim.

Plaintiff also challenges Defendant's claim that the decision to terminate her employment was made on October 5, 2007. However, Plaintiff presents no evidence to counter this fact. (Opp'n at 12:15 - 13:2.) Plaintiff's opposition papers simply state a disbelief of Defendant's "self serving statements, which are contradicted by circumstantial evidence." (Opp'n at 12:21-22.) This is not enough to defeat summary judgment. The mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and opposition papers, is not sufficient to defeat summary judgment. See Thornhill Publishing Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

---

[8] See e.g., McCulley v. Allstate Technical Serv., No. Civ. A. 04-0115-WS-B, 2005 WL 1475314 (S.D.Ala. June 21, 2005); Laurin v. Pokoik, No. 02 Civ.1938 (LMM), 2005 WL 911429 (S.D.N.Y. April 18, 2005); Roberts v. County of Cook, No. 01 C 9373, 2004 WL 1088230 (N.D.Ill. May 12, 2004); Black v. City & County of Honolulu, 112 F.Supp.2d 1041 (D.Haw. 2000); Fleming v. South Carolina Dep't of Corr., 952 F.Supp. 283 (D.S.C. 1996); EEOC v. Domino's Pizza, 909 F.Supp. 1529 (M.D. Fla.1995).

To meet her burden, Plaintiff must come forward with admissible evidence. Fed. R. Civ. P. 56(c); see also, Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

Instead of producing evidence, Plaintiff points toward the absence of evidence: written documentation that Michael decided to terminate Plaintiff on October 5, 2007. As Acting Dean of Middle East School III, the decision to terminate Plaintiff's employment was Michael's to make. The absence of written documents confirming Michael's decision does not refute Michael's own testimony that she did, in fact, make that decision on a specific date. Without any evidence to the contrary, the Court finds that the decision to terminate Plaintiff was made seven days earlier.

Next, Plaintiff argues that Saleh's email on October 12, 2007 is evidence that DLI had not decided to terminate her before she visited the EEO Office on October 10, 2007. (Opp'n at 12-13.) The Court finds no dispute of fact regarding Saleh's October 12, 2007 email and its alleged connection to the termination decision on October 5, 2007.

Retaliation cannot be shown where the protected activity took place after the alleged retaliatory action had already been set in motion. Clark County School District v. Breeden, 532 U.S. 268, 271-72 (2001) (per curiam) (supervisor's contemplation of transferring plaintiff before learning of lawsuit was not retaliation, even though plaintiff's actual transfer did not occur until several weeks later); see also Yartzoff v. Thomas, 809 F.2d 1371, 1374 (9th Cir. 1987) (plaintiff failed to show causation where defendant's decision to administer the allegedly retaliatory test was made prior to plaintiff's protected activity); Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731 n. 1 (9th Cir. 1986) (noting employer who had already decided upon a course of action adverse to the plaintiff prior to learning of the plaintiff's protected activity did not intend to retaliate); McKinny v. American Airlines, Inc., 641 F. Supp. 2d 962, 979-80 (C.D. Cal. 2009) (ultimate decision to terminate Plaintiff's employment was simply the completion of the disciplinary process that had already been initiated at the time of the protected activity).

The evidence in this case demonstrates that Michael made the decision to terminate Plaintiff on October 5, 2007. Additional evidence shows that any subsequent activity on the part of DLI was simply the completion of the disciplinary process that had already been initiated. On the morning of October 5, 2007, Michael suggested the possibility of terminating Plaintiff. At Michael's direction,

Saleh sought advice from CPAC about Plaintiff. That same day, the CPAC human resources department recommended that Plaintiff be terminated and offered to draft the official letter once Michael made the decision to terminate. Saleh returned to Michael and informed her that CPAC had also recommended termination. At that point, on October 5, 2007, Michael made the decision to terminate Plaintiff. As Acting Dean, it was Michael's decision to make.

Even though it took until October 22, 2007 to complete the termination process, the evidence presented makes clear that the actual decision to terminate, the first step in the termination process, was made on October 5, 2007. The Court finds Michael's decision on that date set in motion the event which Plaintiff now claims was retaliatory. Under such circumstances, neither Michael's decision to terminate Plaintiff, nor Zhao's concurrence in that decision, could have been retaliation for sexual harassment claims that had not yet been made.

Plaintiff fails to set forth a prima facie case by showing that the termination on October 5, 2007 shared a causal nexus with Plaintiff's alleged protected activity. Due to this failure, the Court need not address the next step in the McDonnell Douglas test. Because there is no dispute of material fact regarding Plaintiff's ability to establish a claim of retaliation, the Court GRANTS summary judgment on Plaintiff's claim of retaliation.

## V. ORDER

The Court finds that 1) Plaintiff failed to make a timely administrative complaint of her alleged sexually hostile work environment, and 2) Plaintiff did not engage in protected activity, prior to Defendant's decision to terminate Plaintiff, such that she can bring a claim of retaliation. For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: July 21, 2011

EDWARD J. DAVILA
United States District Judge